# **<u>EXHIBIT B</u>**

{YB:00688938.DOCX }

## EXCLUSIVE LICENSE AGREEMENT

AGREEMENT made this _13_ day of _September_, 2017, between Ronald Lee Berkbuegler of Troy, Illinois (hereinafter the Licensor) and Primal Brands, LLC, 150 Morristown Road, Suite 111, Bernardsville, NJ 07924 (hereinafter the Licensee).

WHEREAS, the Licensor has made certain new and useful improvements embracing methods and apparatuses for hunting ladder tree stands, which include ladder hoists, ladder aids, trusses for ladder stands, jaws for ladder stands, adjustment devices for tree stands, gun rests and other hunting and outdoor recreation products listed in Annex B hereto (hereinafter the "Licensed Technology"). Licensor desires to have these Licensed Technology commercially exploited through the granting of an exclusive license to Licensee.

WHEREAS, the Licensee desires to acquire the exclusive license for such Licensed Technology and patent applications filed thereon and patents granted thereon.

IT IS THEREFORE AGREED:

1. *Exclusive License.* The Licensor hereby grants to the Licensee the exclusive worldwide right to enjoy, commercialize, and exploit the above-described inventions; to practice the above-described Licensed Technology; to make, assemble, and use apparatuses, machinery, and devices for carrying such Licensed Technology into practice; and to make, use, sell, or dispose of the products of such processes and apparatuses, machinery, and devices.

(a) The Licensor hereby grants to the Licensee the right to grant sublicenses on such terms as may be approved by each of the parties hereto.

(b) The exclusive rights and license herein granted shall include the Licensed Technology and related improvements, patent applications, or patents that the Licensor now owns or controls or hereafter owns or controls. The parties agree that any new Licensed Technology created by Licensor shall first be offered to Licensee, and if Licensee accepts such offer, any such inventions, patents and/or patent applications shall be added to Annex B.

(c) If the Licensee desires to make or cause to be made such apparatus, machinery, or devices, or replacement parts therefor, then the Licensor shall provide the Licensee or its nominee with the necessary blueprints, working drawings, and all other data and information necessary for the manufacture thereof.

2. *Representations by Licensor.* The Licensor represents:

(a) Such Licensed Technology, unless patented or the subject of a published patent application, are secret and that they have not been revealed to anyone and that Licensor shall not, during the term of this agreement, reveal such secrets to anyone without the approval of the Licensee.

(b) The Licensor is the exclusive owner of all rights to such Licensed Technology, patents and any patent applications filed thereon; has the right to grant the exclusive license

1

hereby granted; has executed no agreement in conflict herewith; and has not granted to any other person, firm, or corporation any right, license, shop right, or privilege hereunder.

3. *Patent Prosecution and Necessary Documents*. For all pending patent applications listed in Annex B, Licensee shall be responsible for pursuit of letters patent, at Licensee's expense. At any time, however, Licensee may elect to discontinue prosecution of patent applications if in its sole discretion, Licensee determines that prosecution of such pending applications is unlikely to result in issuance of commercially useful patent claims. In the event Licensee declines prosecution of any pending application, Licensee shall timely notify Licensor of the election, at which time Licensor may elect to assume responsibility for prosecution of such applications at Licensor's expense. In such event, Licensee shall have no further rights to the subject of said declined applications, and Licensor shall be free to exploit such inventions in any fashion. During Licensee's prosecution of any patent application pursuant to this paragraph, the Licensor shall furnish to the Licensee, or to its nominee and/or patent attorneys, all information and documents regarding such inventions, including the apparatuses and methods in respect thereof, in order to enable Licensee to operate thereunder and to enable its patent attorneys to prepare and prosecute patent applications therefor. The Licensor shall render to the Licensee such services in his consulting capacity as may be necessary in order to instruct the Licensee or its appointed representative, in all operations pertaining to the commercial exploitation of the above-mentioned Licensed Technology.

4. *Maintenance Fees*. During the course of this agreement, and unless this agreement is terminated, the Licensee shall be responsible for paying any maintenance fees due for any letters patents issuing from patent applications filed by the Licensee in relation to this agreement. Upon termination hereof, all obligations for payment of maintenance fees shall revert to Licensor.

5. *Ownership of Patents*. All patents shall be the exclusive property of the Licensor, subject to the exclusive license hereby granted. The Licensor shall, upon demand, execute and deliver to the Licensee such documents as may be deemed necessary or advisable by counsel for the Licensee for filing in the appropriate patent offices evidence of the exclusive license hereby given.

6. *Best Efforts*. Licensee shall exert its best efforts to develop and promote the use of the Licensed Technology herein licensed.

7. *Royalties*. The Licensee shall pay to the Licensor royalties according to the Royalty Schedule set forth in Annex A included with this agreement when covered by one or more claims of the inventions and related improvements according to the Licensed Technology set forth in Annex B included with this agreement.

8. *Payment of Royalties*. The Licensee shall at all times keep an accurate account of the operations coming under the scope of its license and shall render a full statement of the same in writing to the Licensor within thirty days after any quarterly period of each calendar year during the life of this agreement, and at the same time shall pay to the Licensor the amount of earned royalties accrued during the corresponding quarterly period with the understanding that the Licensor shall have the right, at his expense, and not more often than once in each three-month

period, to have a certified public accountant examine the books of the Licensee for the purpose of verifying royalty statements of the operations coming under the scope of this agreement.

9. *Term*. This agreement shall continue until the expiration of the last issued letters patent identified in Annex B or issued from patent applications listed in Annex B, but subject to the following:

(a) The Licensee may at any time, upon six-month written notice to the Licensor, terminate this agreement without prejudice.

(b) If the royalty payments are in arrears for thirty days after the due date and either (1) notice is given thereafter to the Licensee by registered mail and such payment remains in arrears for thirty days after sending such notice, (2) the Licensee defaults in performing any of the other terms of this agreement and continues in default for a period of ninety days after written notice thereof, or (3) the Licensee is adjudicated bankrupt or insolvent, enters into a composition with its creditors, or a receiver is appointed for it, then the Licensor shall have the right to terminate this agreement upon giving notice to the Licensee at least thirty days before the time when such termination is to take effect. Thereupon the agreement shall become void without prejudice to any remedy of the Licensor for the recovery of any moneys then due under this agreement and without prejudice to any other right of the Licensor.

(c) Upon termination under subdivisions (a) or (b) of this paragraph, the Licensee shall duly account to the Licensor and transfer all rights that it may have to the Licensed Technology, patents, inventions, processes, and apparatuses, together with all rights to any sublicense or sublicenses that may have been granted pursuant to the terms hereof.

10. *Infringement*. The Licensee shall defend at its own expense all infringement suits that may be brought against it on account of the manufacture, use, or sale of the processes and apparatuses covered by this agreement. When information is brought to Licensee's attention indicating that others without license are unlawfully infringing on the rights granted herein, the Licensee may elect to prosecute any infringer in its sole discretion and at its own expense. If the Licensee finds it necessary or desirable in any suit that the Licensee may institute, the Licensee may join the Licensor as a party. In such event, the Licensor shall not be chargeable for any costs or expenses. In connection with such suits, the Licensors shall execute all papers necessary or desirable and the Licensor shall testify in any suit whenever requested so to do by the Licensee, all at the expense, with respect to traveling and the like, of the Licensee. Nothing in this paragraph shall obligate Licensee to enforce any patents which are the subject of this agreement. In the event Licensee elects not to enforce its rights as exclusive license, Licensor shall be free to so enforce at its expense.

11. *New Improvements*. If during the continuance of this license, the Licensor makes any further improvement in such Licensed Technology or the mode of using them or becomes the owners of any such improvements either through patents or otherwise, then the Licensor shall communicate such improvements to the Licensee and give the Licensee full information regarding the mode of using them and the Licensee shall be entitled to use the same with all rights that are hereby granted to the Licensee in respect of the above-mentioned inventions without paying any additional royalty with respect thereto.

(a) *New Inventions and/or New Licensed Technology.* If during the continuance of this license, the Licensor develops new inventions and/or new licensed technology, Licensor shall have the right to elect, at its sole discretion, to negotiate with Licensee and secure a separate license agreement which includes some or all of the terms and conditions of this agreement.

12. *Insurance.* Licensee shall, throughout the Term of the Agreement, obtain and maintain at its own cost and expense from a qualified insurance company having a Moody's rating of A or better, standard Product Liability Insurance naming Licensor as additional insured. Such policy shall provide protection against all claims, demands and causes of action arising out of all defects or failure to perform, alleged or otherwise, of the licensed products or any material used in connection therewith or any use thereof. The amount of coverage shall be at least equal to the amount of coverage currently maintained by Licensee. The policy shall provide for thirty (30) days notice to Licensor from the insurer by Registered or Certified Mail, return receipt requested, in the event of any modification, cancellation or termination thereof. Licensee agrees to furnish Licensor a certificate of insurance evidencing coverage on or before the day of execution of this Agreement.

13. *Markings & Samples.*

(a) Licensee shall fully comply with the patent marking provisions of the United States Patent laws, including, without limitation, marking each individual unit of the Licensed Technology with the patent number(s) issued to the Licensed Technology.

(b) Licensee shall furnish Licensor, free of charge, a reasonable number of representative samples of the Licensed Technology and its packaging upon its availability at retail.

14. *Governing Law.* This Agreement shall be construed and interpreted and its performance governed by the laws of the State of Michigan.

15. *Arbitration.* Any dispute under this agreement shall be settled by arbitration, pursuant to the Commercial Arbitration Rules, then obtaining, of the American Arbitration Association.

16. *Notice.* Any notice required under this agreement shall be addressed as follows:

Licensor: Ronald Lee Berkbuegler, 8767 Old Lebanon/Troy Road, Troy, Illinois 62294

Licensee: Primal Brands, LLC, 150 Morristown Road, Suite 111, Bernardsville, NJ 07924

17. *Benefit.* This agreement shall be binding upon and inure to the benefit of the heirs, legal representatives, successors, and assigns of the parties hereto.

18. *Captions.* The captions of the several paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this agreement.

19. *Entire Agreement.* This agreement embodies the entire understanding of the parties and supersedes all previous communications, representations, or understandings, either oral or written, between the parties relating to the subject matter thereof.

20. *Counterparts.* This agreement may be signed in counterparts, each of which, when taken together, shall constitutes one fully executed document. Each individual executing this agreement on behalf of a legal entity does hereby represent and warrant to each other person so signing that he or she has been duly authorized to execute this agreement on behalf of such entity.

21. *Waiver.* No waiver by either party hereto of any breach or default of any of the covenants or agreements herein set forth shall be deemed a waive as to any subsequent and/or similar breach or default.IN WITNESS WHEREOF, the parties have executed this agreement.

Licensor: Ronald Lee Berkbuegler (Inventor)

Signature: _____  Date: 9/13/17

Licensee: Primal Brands, LLC

Representative's Name: Andrew Wu   Title: Manager

Signature: _____  Date: 9/20/17

## ANNEX A – Royalty Schedule

| Licensed Technology | Royalty Fee |
|---|---|
| Ladder Hoist | _____ ladder hoist sold that is in accordance with the inventions under the license and any sublicenses that may be granted by the Licensee. |
| Ladder Aid | ladder aid that is in accordance with the inventions under the license and any sublicenses that may be granted by the Licensee. |
| Ladder Truss | truss for a ladder stand that is in accordance with the inventions under the license and any sublicenses that may be granted by the Licensee. |
| Ladder Jaws | _____ thereafter) per set of jaws for a ladder stand that is in accordance with the inventions under the license and any sublicenses that may be granted by the Licensee. |
| Bullet Drive | bullet drive adjustment for climbing tree stands that is in accordance with the inventions under the license and any sublicenses that may be granted by the Licensee. |
|  |  |
|  |  |
|  |  |